UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-23042-Civ-COOKE/TORRES

LEIDYS MARTIN,

    Plaintiff,

vs.

UNITED STATES OF AMERICA,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Leidys Martin ("Plaintiff") brings this negligence action against Defendant United States of America ("Defendant") pursuant to the Federal Tort Claims Act, *see* 28 U.S.C. § 2671, et seq.; 28 U.S.C. § 1346(b)(1), because of a fall she suffered at the Federal Correctional Institution in Miami ("FCI-Miami") while visiting her husband. Defendant has filed a Motion for Summary Judgment ("Motion") (ECF No. 31). Included in its Motion is its Statement of Undisputed Material Facts. *Id.* Plaintiff filed her Response in Opposition (ECF No. 32), which also includes within it a Statement of Undisputed Material Facts. Defendant has filed its Reply (ECF No. 37) and the matter is now ripe for review. After careful review of the parties' briefs, the record, and the relevant legal authorities, Defendant's Motion is granted.

### I.     BACKGROUND

Plaintiff's husband is currently serving a sentence at the FCI-Miami, where he has been since incarcerated October 31, 2013. Def.'s Statement of Undisputed Material Facts ("Def.'s SMF"), ECF No. 31, ¶ 1.[1] Since October 31, 2013, Plaintiff's husband has been allowed six visits a month. *Id.*, at ¶ 2. As of the date of her deposition in May 2017, Plaintiff

---

[1] Certain statements of material facts offered by each side are deemed admitted to the extent they are supported by evidence in the record and not specifically disputed, or are insufficiently contested, by the opposing side in related filings. *See* S.D. Fla. L.R. 56.1(b); Fed. R. Civ. P. 56(c), (e); *see also Gossard v. JP Morgan Chase & Co.,* 612 F. Supp. 2d 1242, 1245 – 46 (S.D. Fla. 2009).

had visited her husband on each of his available visits except one. *Id.*, at ¶ 3. During each of her visits, Plaintiff follows a routine. *Id.*, at ¶ 4. For Saturday visits, Plaintiff arrives around 6:00 a.m. and waits in her car until right before 8:00 a.m., when the doors to the facility open. *Id.*, at ¶ 5; Pl.'s Depo., ECF No. 31-1, 66:25–67:1. Plaintiff is usually one of the first in line to enter the facility to wait to be processed. Def.'s SMF, at ¶ 5. Once inside the doors, the visitors are processed and organized into groups of five for entry into the visiting area. *Id.*, at ¶ 5. A Federal Bureau of Prisons ("BOP") officer escorts each group of five visitors into the visiting room one group at a time. *Id.*, at ¶¶ 7–8. Once inside the visiting room, Plaintiff follows her routine of taking her identification and form to the BOP desk, putting her things in the seating area assigned to her, and then going to the vending. *Id.*, ¶ 10. According to Plaintiff, the visitors usually go to the vending machines first because the vending machines tend to run out of food. Pl.'s Depo., 85:21–22.

Generally, after visits conclude for the day, BOP has orderlies clean and mop the visiting areas. Def.'s SMF, ¶ 27. After the orderlies have cleaned the room, a BOP officer does a general walkthrough of the area. Aguilar Depo., 15:5–8. It is part of the BOP officer's responsibility to make sure the visiting room is clean and inspected before going home. Andrews Depo., 9:7–14. In addition to checking the room in the evening, on the morning of a visiting day a BOP officer does a general walk-through of the visiting room before opening the room to visitors. Aguilar Depo., 11:11–12:14.

On Saturday November 22, 2014, Plaintiff visited her husband at FCI-Miami. Def.'s SMF, ¶ 11. BOP Officer Aguilar and BOP Officer Andrews entered the visiting room at 7:30 a.m. that morning. Pl.'s Statement of Undisputed Material Facts ("Pl.'s SMF"), ECF No. 32, ¶ 34–35. Officer Aguilar performed a general walk through soon after he arrived, including inspecting the area where Plaintiff later slipped. Aguilar Depo., 11:11–23. At about 8:40 a.m., BOP officers began processing visits. Pl.'s SMF, ¶ 36. Plaintiff was in the third visitor group processed for visits, but in the first group of visitors allowed into the visiting room. Def.'s SMF, at ¶ 13. Once inside the visiting room and after checking in with the BOP desk, Plaintiff went to the vending machine and purchased a pizza and sandwich. Def.'s SMF, at ¶ 14. She was the first person at the vending machine. Pl's SMF, ¶ 39. As she was going back to her assigned seating area, Plaintiff slipped and fell near the entrance of the visiting room.

2

Def.'s SMF, at ¶¶ 14–15.[2] Plaintiff's slip occurred around 8:46 a.m. Aguilar Memo., p. 2. According to Plaintiff, she slipped on some water. Pl.'s Depo., 101:4–19. Plaintiff testified that the substance was clear and not dirty, and that she heard someone say the substance was water. Pl.'s Depo., 102: 17–23, 103:5–12. Ms. Rose Donahue, a fellow visitor, testified that she did not remember seeing any water on the floor where Plaintiff slipped. Donahue Depo., 28:7–12. According to Plaintiff, a BOP supervisor and some relatives wiped up the area where she fell. Pl.'s Depo., 103:5–10. Plaintiff recalls seeing the BOP supervisor with a wet paper towel. Pl.'s Depo., 104:5–15. BOP Officer Aguilar observed dry wet spots where Plaintiff fell, as well as two black skid marks from Plaintiff's shoes. Pl.'s SMF, ¶ 52. However, Officer Aguilar did not see any water or any indication that there had been water other than the spots. Aguilar Depo., 9:25–11:5.

On Plaintiff's many weekend visits where she was in the first group allowed into the visiting room, she has not seen water on the floor where she slipped, nor has the visiting room been dirty. Pl.'s Depo., 117:22–118:9. Ms. Donahue also testified that the room always looked clean and she did not know why the floor would have been wet that morning. Donahue Depo., 45:3–7, 60:4.

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "The moving party bears the initial burden to show the district court . . . that there is no genuine issue of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However,

---

[2] Plaintiff points out that video cameras film the visiting room and were in use the day of Plaintiff's fall. *See* Pl.'s SMF, ¶ 65. However, Defendant maintains that the videos are overwritten after fourteen (14) days and thus were not available to be preserved in response to Plaintiff's certified letter received by FCI-Miami on December 12, 2014. *Id.*

3

"there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249-50 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1968)). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* (internal citations omitted).

### III. DISCUSSION

"Under the Federal Tort Claims Act ["FTCA"], the United States is liable for the negligent conduct of its employees 'in the same manner and to the same extent as a private individual under like circumstances.'" *Howell v. United States*, 932 F.2d 915, 917 (11th Cir. 1991) (citing 28 U.S.C. § 2674; *see also* 28 U.S.C. § 1346(b)). "Congress's chief intent in drafting the FTCA was simply to provide redress for ordinary torts recognized by state law." *Id*. As such, state law applies to determine whether Defendant is liable for negligence. *Id.* Under Florida law, "[t]he mere fact that a person falls in a store does not automatically mean that the store is liable." *Yaicel De La Caridad Sanchez v. Sears, Roebuck & Co.*, 2015 WL 6599696, at *2 (S.D. Fla. Oct. 30, 2015) (citing *Bucholtz v. City of Jacksonville*, 72 So. 2d 52, 53 (Fla. 1954)). To support a negligence action, a Plaintiff must show: "(1) duty, (2) breach of duty, (3) injury arising from the breach, and (4) damages caused by the injury as a result of the breach of duty." *Vallot v. Logan's Roadhouse, Inc.*, 567 F. App'x 723, 726 (11th Cir. 2014). Additionally, Florida statute provides, "[i]f a person slips and falls on a transitory foreign substance in a business establishment, *the injured person must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it.*" *Id.*, at 725 (emphasis in original) (quoting Fla. Stat. § 768.0755(1)).

Defendant's sole argument in its Motion is that Plaintiff's negligence claim fails because Plaintiff cannot show that Defendant had actual or constructive knowledge that there was allegedly a substance on the floor. Plaintiff does not contend that Defendant had actual knowledge; rather, Plaintiff maintains that the alleged substance was on the ground a sufficient time for Defendant to have constructive knowledge of its presence. "Constructive notice may be inferred from either: (1) the amount of time a substance has been on the floor; or (2) the fact that the condition occurred with such frequency that the owner should have known of its existence." *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087,

1090 (Fla. Dist. Ct. App. 2011) (citing *Schaap v. Publix Supermarkets, Inc.,* 579 So.2d 831, 834 (Fla. 1st DCA 1991)).

In the instant case, there is an issue of fact as to whether there was water on the ground where Plaintiff fell. Plaintiff said she saw a clear substance on the ground after she slipped and that the visitors who wiped the floor where she fell had wet paper towels; however, neither Officer Aguilar nor Ms. Donahue saw any water. Taking this evidence in the light most favorable to Plaintiff, I must conclude that there was some wet substance on the floor that was clear and could have been water. Nevertheless, "the mere presence of water on the floor is not enough to establish constructive notice[;] the record must contain additional facts in support of liability, to create a permissible inference upon which [Plaintiff] could rely in defense against [Defendant's] motion for summary judgment." *Delgado*, 65 So. 3d at 1090. "[A] person claiming that a store was negligent by not cleaning up a dangerous condition must present some evidence that the dangerous condition that caused her fall existed for such a length of time that, in the exercise of ordinary care, the store would have known of the condition." *Valles v. Target Corp.*, 2015 WL 1640326, at *2 (S.D. Fla. Apr. 9, 2015) (citing *Vallot v. Logan's Roadhouse, Inc.*, 567 F. App'x 723, 726 (11th Cir. 2014)).

The facts of *Delgado* are almost identical to the facts of the case at bar. *Delgado*, 65 So. 3d. In *Delgado*, the plaintiff walked into a laundromat and after a few steps slipped and fell. *Id.*, at 1090. Similarly to Plaintiff, she thought the substance she slipped on was water because it was transparent. *Id.* "Delgado testified she did not: (1) know where the water came from; (2) see water anywhere else other than where she slipped; (3) know how long the water was on the floor before she slipped; or (4) know of anyone at Laundromax who knew the water was on the floor before she walked in." *Id.*

Here, Plaintiff does not know where the alleged water came from, she did not see any other water except where she slipped, she did not know how long the water was on the floor prior to her slip, and she did not know of anyone who knew the water was there before she slipped. Plaintiff claims she can show that "the orderlies who mopped the floor the night before left the water on the floor." Pl.'s Resp., p. 9. However, Plaintiff overstates her evidence. A general practice of cleaning the premises is not affirmative proof that water was left overnight and escaped notice during two general walkthroughs. In fact, Officer Aguilar

5

testified that he specifically inspected the area where Plaintiff slipped and fell the morning of her fall. Plaintiff herself testified that she had never seen the visiting room dirty first thing in the morning on a weekend visit, and Ms. Donahue also testified that the room always seemed clean.

Plaintiff argues that because Defendant had exclusive control of the room from 7:30 a.m. until Plaintiff slipped at 8:46 a.m., it means the substance was on the floor for one hour and sixteen minutes, which case law has shown to be enough time to establish constructive notice. However, visitors were allowed in beginning at 8:40 a.m. and Plaintiff has submitted no evidence showing *when* or *how* the substance found its way onto the floor to make such cases applicable. "Just like in *Delgado*, this is not enough to establish that [Defendant] breached its duty of care." *Vallot*, 567 F. App'x at 726. Simply put, the fact that the room was cleaned the night before Plaintiff's visit does not give rise to a claim of negligence; such evidence is merely colorable and not significantly probative. *See Anderson*, 477 U.S. at 249-50. "[B]ecause the record is completely devoid of any evidence, either direct or circumstantial, directed to [Defendant's] notice of the dangerous condition, no negligence was shown and summary judgment [is] proper." *Evens v. E. Air Lines, Inc.*, 468 So. 2d 1111, 1112 (Fla. Dist. Ct. App. 1985).

## IV. CONCLUSION

Accordingly, it is **ORDERED and ADJUDGED** that Defendant's Motion for Summary Judgment (ECF No. 31) is **GRANTED**. The Clerk shall **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*. A separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure shall issue concurrently.

**DONE and ORDERED** in Chambers, Miami, Florida, this 20th day of November 2017.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Edwin G. Torres, U.S. Magistrate Judge*
*Counsel of record*

6